IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Nadine C. Jones, ) | Civil Action No. 8:06-2765-JFA-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of ) | **OF MAGISTRATE JUDGE** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Nadine C. Jones, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 42 years old as of the Administrative Law Judge's (ALJ) decision. (R. at 14, 56.) The plaintiff has a tenth-grade education and has worked as a janitor, grounds keeper/park worker, nursing assistant, and fast food cook. (R. at 56, 79-81, 124, 134-41).

The plaintiff previously filed claims for DIB and SSI on July 15, 1997 (denied on August 17, 1998), October 13, 1998 (denied on January 26, 1999), and April 26, 1999 (denied on January 12, 2000). (R. at 13, 132). In all those applications, the plaintiff alleged

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

disability since July 7, 1997).  (R. at 13, 132).  The plaintiff filed her current applications for DIB and SSI in September 2003, alleging disability since July 7, 1997, and April 30, 2000, as a result of surgical removal of her left eye, depression, headaches, and a heart murmur. (R. at 113-15, 123-24, 461-67.)  The plaintiff's applications were denied initially and upon reconsideration, on January 12, 2006, a hearing was held before an ALJ. (R. at 40-87, 468-69.)  On March 8, 2006, the ALJ found that plaintiff was not disabled because she could perform her past relevant work as a janitor and grounds keeper/park worker.  (R. at 13-20.) The Appeals Council denied plaintiff's request for a review of the ALJ's decision, (R. at 5-7), thereby making the ALJ's second decision the Commissioner's final decision of judicial review.

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date.

2. The claimant last met the insured status requirements for Title II benefits on September 30, 2003.

3. The medical evidence establishes he claimant has major depression, hypertension, asthma, and personality disorder, which are "severe" impairments, as defined in the regulations, but that she does not have an impairment or combination of impairments that meet or equal the criteria set forth in the Listing of Impairments.

4. The claimant has medical impairments that could reasonably cause some of her subjective symptoms.  However, the claimant's subjective allegations are not supported by the evidence and are not fully credible.

5. The claimant's has the residual functional capacity to lift and/or carry (including upward pulling) 50 pounds occasionally and 25 pounds frequently; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) with no limitations except as shown for lift and/or carry.  She should avoid concentrated exposure to extreme heat and cold.  Due to depression, with some affective instability, the claimant may have difficult sustaining her concentration and pace on complex tasks and detailed instructions. However, she should be able to attend to and perform simple tasks for 2+ hours without special supervision.  She can attend work regularly, but may miss an occasional day due to her mental condition, and would function better in a slower-paced, lower-stress work environment, with positive supervision. She can relate appropriately to supervisors and co-workers, however, may function better in a job that does not require her to work closely with the general public.   She can make simple work-related decisions and occupational adjustments, adhere to basic standards for hygiene and

>    behavior protect herself from normal work place safety hazards, and use public transportation.
>
> 6. The claimant's past relevant work as a grounds keeper/park worker and janitor do not require the performance of work-related activities precluded by the above limitations.
>
> 7. The claimant's impairments do not prevent the claimant from performing her past relevant work as a grounds keeper/park worker or janitor.
>
> 8. The claimant was not under a "disability," as defined in the Social Security Act and regulations, at any time through the date of this decision.

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden

of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to consider the combined effects of the plaintiff's impairments; (2) finding that the plaintiff could return to her past relevant work; (3) failing to include all of the plaintiff's limitations in his hypothetical to the vocational expert ("VE"); and (4) failing to fully develop the record. The Court will address each alleged error in turn.

### I.     **Combined Effects of the Plaintiff's Impairments**

The plaintiff first argues that the ALJ erred in not considering the combined effect of all of her impairments and failed to identify the plaintiff's missing left eye as a severe impairment. She specifically claims that the ALJ did not consider the combined effect of the plaintiff's hypertension, asthma, and heart impairments. While the plaintiff complains about all three impairments, she has not put forward any evidence of limitations related to the plaintiff's hypertension that were not included in the plaintiff's residual functional capacity ("RFC") but which she contends should have been. Accordingly, the Court will only address the additional limitations associated with the plaintiff's asthma and heart impairments about which she now complains.

As an initial matter, the ALJ definitively considered the combined effect of those impairments that he found to be supported by the evidence (R. at 17-18.), which is his duty, *see* 20 C.F.R. §§ 404.1523, 416.923. He specifically considered the combined effect of the plaintiff's depression, hypertension, asthma, and personality disorder, which he found to be severe. (R. at 17, 19.) He further expressly emphasized that he had "considered the combined effect of all the claimant's alleged impairments, and effects of prescribed medications . . . ." (R. at 18.) He included limitations regarding each of these impairments in his hypotheticals to the vocational expert ("VE") (R. at 82) and included them in his

5

residual functional capacity (R. at 18.)  In so doing, he was able to consider how the limitations, taken together, might preclude the plaintiff's ability to work.

In regards to the plaintiff's cardiac impairments, the plaintiff admits that the State Agency physician (R. at 342), Dr. Darla Mullaney -- relied upon by the ALJ -- expressly limited the plaintiff in regards to exposure to extreme heat and cold due to issues with the plaintiff's heart.  (Pl. Brief at 6.)  That limitation was, in fact, reflected in the ALJ's RFC and hypothetical to the VE.  (R. at 18, 82.)

Concerning the plaintiff's asthma, the plaintiff contends that the ALJ should have considered the additional limitation that the plaintiff should not be exposed to fumes, odors, dusts, and poor ventilation.  In support, the plaintiff cites to the opinion of a second State Agency physician, Dr. Richard Weymouth, who concluded that the plaintiff should avoid such exposure.  (R. at 414.)  Of course, the ALJ was not required to accept that opinion. As stated, the ALJ relied upon the opinion of Dr. Mullaney, which did not include such a limitation. (See R. at 342.)  Dr. Weymouth's opinion was not entitled to any specific weight and Dr. Mullaney's opinion constitutes substantial evidence to refuse to include the proposed limitation.

The plaintiff also seems to argue that, as a matter of law, such limitations universally accompany asthma as a medical condition, citing to *Perkins v. Barnhart*, No. 03-1612 (3rd Cir.).[2]  In that case, however, as the plaintiff quotes, "uncontradicted medical evidence show[ed] [that the plaintiff's] asthma preclud[ed] such exposure," to wit, fumes and heavy dust.  *Id*.  As noted, the evidence in this case is not uncontradicted, and the ALJ was entitled to rely on Dr. Mullaney's opinion over Dr. Weymouth's opinion.

The ALJ considered the combined effects of all the impairments and had substantial evidence to reject exposure to fumes, dust, etc., as a relevant limitation.

---

[2]  It does not appear that the plaintiff has actually submitted this case and the Court has not been able to independently find it.  The Court has relied on the quote included in the plaintiff's brief.

The plaintiff also complains that the ALJ improperly discounted the severity of the limitations created by her missing left eye as not severe and, further, that those limitations should have been considered in his RFC. The plaintiff underwent enucleation of her left eye after trauma in July 1997 and was subsequently given a prosthesis. (R. at 14, 176-220.) To that end, the plaintiff puts forth substantial testimony of her and her husband regarding problems she has in performing daily activities. The plaintiff testified that she can use a fork but cuts herself using a knife and has marks on her arms and hands (R. at 67); that her husband has to help her into the tub because she has a tendency to slip and trip, *id.*; that her husband has to help her put on her pants because she trips and falls (R. at 68); and has trouble making a sandwich or small meal because she has trouble with her "judging, just basically judging, my sight," *id*. The plaintiff also testified that if she walks or stands too long she trips "on [her] own feet." *Id*.

The plaintiff's husband corroborated this testimony. He stated that the plaintiff burns herself and attempted to show the ALJ the plaintiff's arms. (R. at 75.) The plaintiff's husband then went on to say, "She has little accidents in the house. She falls, trips . . . I tried to get her to cook. I do all the cooking . . . She burns herself on the stove because we have electric stove . . . she burns herself by, you know, like trying to take things out of the stove . . . Cuts herself, cuts her fingers with knives, sir." (R. at 75-76.)

On her Daily Activities Questionnaire the plaintiff indicated that she gets help for personal needs and grooming because she is "scared of falling . . . I'm unbalanced." (R. at 142.) She emphasized that she has trouble cooking meals she burns herself and break [sic] dishes. (R. at 143.) In fact, the plaintiff had to go to the emergency room for stitches, when she tried to get plates out of the cabinet and they fell on her head. (R. at 301.) The questionnaire further indicates that the plaintiff needs help with housework, "I'm scared I'm going to fall and or hurt myself, my judgment is very much off." (R. at 143.) The plaintiff stated that she has trouble shopping because she "bump[s] into people, hit[s] them, trip[s] over thing [sic] uncontrollable . . . ." (R. at 144.) She stated, I don't see things . . . so

basically I *don't* shop, I'm scared." (R. at 144 (emphasis in original).) Further, the plaintiff indicated that she used to sew and read as hobbies but no longer does these activities: "I can't thread needles anymore, I can't focus . . . ." *Id*.

The plaintiff argues that all of this evidence is essentially uncontradicted by any other evidence of record and that the ALJ erred in not finding the impairment severe. While the ALJ expressly addressed the plaintiff's testimony in his decision, the Court agrees with the plaintiff that there is no real explanation for why the testimony is discounted and why the missing eye was not considered a severe impairment.

As an initial matter, the ALJ made a general credibility determination as to the plaintiff's "hearing testimony and the evidence concerning the claimant's subjective complaints of pain and functional limitations . . . ." (R. at 17.) It is fairly clear that this credibility determination reflects the ALJ's belief that the plaintiff's testimony concerning the loss of her eye were not fully credible. Notwithstanding, the Court does not believe that the cited reasons for discounting her testimony were substantial or even specifically relevant to the inquiry.

Specifically, the ALJ found that the plaintiff's allegations concerning her mobility were not consistent with the medical evidence. The ALJ stated that her "problems with mobility due to her visual impairment [are] not consistent with, nor supported by, the medical evidence which reflects the claimant denied problems with ambulation." (R. at 17.) The ALJ also found that "physical examinations consistently demonstrated the claimant moved all extremities well, that she had normal reflexes, and that she was neurologically intact." *Id*.

First, the Court is unaware of any medical notation indicating that the plaintiff denied problems with ambulation. Neither the ALJ's decision nor the defendants' brief identifies such evidence, as far as the Court can tell. The ALJ does refer to an eye exam in October of 2003, wherein she denied blurred vision or problems with ambulation due to her decreased vision. (R. at 14.) The Court has reviewed those records and cannot identify

the denials attributed to the plaintiff. (R. at 326-30.) In fact, the defendant has admitted that on October 14, 2003, the plaintiff did complain of blurry vision (R. at 326). (Def. Brief at 8.) Even if evidence of the kind described by the ALJ exists, it would seem necessary to consider under what circumstances and how frequently the plaintiff made such denials before dismissing rather adamant testimony from the plaintiff and her husband that she does suffer substantial daily limitations as a result of her visual impairment. Ultimately, the Court cannot judge either way because the ALJ has not explained his rationale.

Second, the fact that, upon examination, the plaintiff's extremities moved well, that her reflexes were normal, and that she was neurologically intact seems largely irrelevant to whether or not her vision effects her mobility and performance of tasks. The plaintiff does not allege an impairment to her arms or legs or reflexes. She claims that she has difficulty judging depth of field, which has the effect of diminishing the performance of her otherwise normal and healthy extremities, reflexes, and neurological system. To equate the two, in the Court's estimation, is somewhat of a non-sequitur and certainly an insubstantial basis to reject her testimony.

The defendant also points to other rationale of the ALJ concerning his decision to discount her testimony, including her limited use of pain medication; the effectiveness of other medications for asthma, hypertension, and depression; lack of hospital visits; and her noncompliance with treatment. (R. at 16, 17.) It is true that such considerations would normally justify an ALJ's decision to discount the subjective allegations of a claimant. *See, e.g., Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (finding as relevant attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities)*; Murphy v. Sullivan*, 1994 WL 677656, at *1-2 (4th Cir. December 05, 1994) (finding medication effective). The Court, however, finds such considerations not relevant, here, because the alleged effectiveness of medications, her alleged noncompliance, and a want of strong pain medications are all factors which relate to the severity of other impairments and say nothing about the severity of the limitations created by her vision.

9

The Court is particularly persuaded by what appears to be the general absence of any consideration of the impairment's effects, even if the plaintiff has exaggerated them. The plaintiff summarizes it best: Even if the plaintiff had perfect vision in her one remaining eye and had no problems coping with the loss of the other eye, whatsoever, she would still have visual limitations in the form of near acuity, far acuity, depth perception, and accommodation. The Court has not been presented with any specific evidence in support of that contention but it certainly seems to be a reasonable one. Regardless, there is no consideration whatsoever of the limitations, which would be caused by losing one eye, generally, much less whatever specific difficulties the plaintiff has which are allegedly unique to her.

Although not an allegation of pain, the plaintiff has alleged subjective symptoms, which the ALJ should consider in accordance with 20 C.F.R. §§ 416.929(a) and 404.1529(a), which provide the authoritative standard for the evaluation of pain and other symptoms in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or *other symptoms* is a two-step process." *Id.* at 594 (emphasis added). First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id*. at 596.

On remand, therefore, the ALJ should discuss whether the loss of an eye could reasonably be expected to produce the kinds of limitations the plaintiff describes. If it can,

then the ALJ should explain anew what basis he finds to either accept or reject her specific claims as to the degree and extent of those limitations.  While the ALJ performs some semblance of this analysis as to her depression, hypertension, asthma, and personality disorder (R. at 17-18), he makes no such effort in regards to her vision.

Also, to the extent the ALJ determines that the plaintiff's visual impairment is both severe and credible, he should repose a hypothetical to the VE reflecting such impairment, as requested in the plaintiff's third allegation of error.

## II.     Vocational Expert

The plaintiff contends that there were three problems with the VE's testimony that the plaintiff could perform her past relevant work as either (1) a grounds keeper/park worker or (2) a janitor.  First, the plaintiff argues that the VE erroneously treated a grounds keeper/park worker position as "past relevant work."  The plaintiff contends that the position does not constitute substantial gainful activity because it was through a work program and she earned no income.  The defendant essentially concedes this point.  (Def. Brief 19.)

Second, the plaintiff argues that the VE erroneously concluded that the plaintiff could perform her past relevant work as a janitor, which is defined to require heavy exertional work, when the ALJ had expressly limited the plaintiff to medium exertional work.  Again, the defendant concedes the error.  (Def. Brief 19.)

The defendant, however, argues that both of these errors are harmless insofar as the plaintiff's prior work as a janitor only required medium exertional and not heavy exertional work.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").  Therefore, the defendant contends that the VE's conclusion was effectively proper insofar as the plaintiff can perform her past relevant work as *it was actually performed*.  *See Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995).  It is true that "under the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either *as he*

11

*performed it* or as it generally required by employers in the national economy." *Id*. (emphasis added). The defendant argues that the evidence reveals that the plaintiff performed her janitorial work at the medium work level – lifting a maximum of 20 to 50 pounds, frequent lifting of 20 to 25 pounds, and six hours of walking/standing a day. (See R. at 125, 135.)

The plaintiff responds by pointing to inconsistencies in the Work History Report relied upon by the defendants, including the amount and frequency the plaintiff was required to lift as a janitor. (Pl. Reply Brief at 3; R. at 135.) The Court agrees that those discrepancies require some illumination. The plaintiff also identifies other evidence of record suggesting that the plaintiff's prior work as a janitor was performed at the heavy work level and not at the medium work level. (R. at 117, 135 (reflecting the possibility that tasks such as shoveling snow, cleaning, mowing, and painting might all qualify as heavy work).)

The Court will not decide the conflict. On remand, the ALJ should consider whether the plaintiff actually performed her past relevant work as a janitor at either the medium or heavy exertional levels.

Lastly, the plaintiff contends that the ALJ generally erred in relying on the vocational expert for an opinion as to whether the plaintiff could perform her past relevant work. The plaintiff argues that such reliance at step four is impermissible in the Fourth Circuit. This was once the rule. *See Pass v. Chater*, 65 F.3d 1200, 1205 (4th Cir. 1995) ("Inquiry into the existence of 'work . . . in the national economy' is therefore germane to 'any other kind of substantial gainful work' under the statute, but is not to be considered with regard to 'previous work.'"); *Smith v. Bowen*, 837 F.2d 635, 637 (4th Cir.1987) (per curiam) (stating that it is improper to rely upon the testimony of a vocational expert at step four to elaborate on a claimant's former job; the vocational expert's opinion becomes pertinent only after a finding has been made that the claimant cannot perform past relevant work). Those decisions, however, have been superceded by 20 C.F.R. §§ 404.1560(b), 416.960(b), which permits the ALJ to use a VE at step four of the sequential evaluation process. *See*

*Daniels v. Astrue*, 2007 WL 2126395, at *5 n.7 (W.D. Va. July 23, 2007). The ALJ committed no error in this regard.

### III.     Duty to Develop the Record

Finally, the plaintiff argues that the ALJ erred in not requesting medical opinions from various sources, particularly from a Dr. Olatoxi of the Sandhills Medical Center. It is true that the ALJ has a duty to "diligently . . . explore all relevant facts especially in the case of uneducated, pro se claimants and where the absence of counsel appears to prejudice a claimant." *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981). It is undisputed that the record before the ALJ had substantial "medical records of treatment, prescriptions, and diagnosis" from all of the plaintiff's treating medical sources. (Pl. Brief at 18.) While counsel for the plaintiff might have preferred an opinion letter from Dr. Olatoxi regarding the plaintiff's Hepatitis B, the Court cannot conclude, in light of the thorough accumulation of medical evidence before the ALJ, that he committed error by not requesting something more. The plaintiff has not identified to the Court what circumstances existed which would have put the ALJ on notice that there was some particular deficiency in the record such that it was error not to inquire further. There existed substantial evidence for the ALJ to conclude that he had an adequate and developed record. There is no error.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence. It is, therefore, RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>United States Magistrate Judge

January 31, 2008
Greenville, South Carolina